<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF THE VIRGIN ISLANDS**

| | |
|---|---|
| ZENZILÉ M. HODGE, | Civil Action No. 13-CV-00032 |
| Plaintiff, | (SDW) |
| v. | |
| NATIONAL RURAL UTILITIES COOPERATIVE FINANCE CORPORATION; VIRGIN ISLANDS TELEPHONE CORPORATION ("VITELCO") d/b/a INNOVATIVE TELEPHONE; FTI CONSULTING; CARIBBEAN ASSET HOLDINGS; SETH DAVIS, as Chief Executive Office, in his individual capacity; J. ROBERT GARY, in his individual capacity and CARMELO O. RIVERA, as Vice President of Human Resources, Labor and Administration, | **OPINION**<br><br>April 28, 2014 |
| Defendants. | |

**WIGENTON,** District Judge.

Before the Court is Defendant National Rural Utilities Cooperative Finance Corporation's ("CFC") Motion to Dismiss Plaintiff Zenzilé M. Hodge's ("Hodge" or "Plaintiff") amended complaint ("Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6). Also before the Court is Defendants Virgin Islands Telephone Corporation d/b/a Innovative Telephone's ("Innovative" or "VITELCO") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule of Civil Procedure 12.1; FTI Consulting ("FTI") and Caribbean Asset Holdings' ("CAH") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and

Local Rule of Civil Procedure 12.1; Seth Davis ("Davis"), Robert Gary ("Gary"), and Carmelo Rivera's ("Rivera") individual Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule of Civil Procedure 12.1.

This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a).  Venue is proper pursuant to 28 U.S.C. § 1391.  These Motions are decided without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons discussed below, this Court **GRANTS** CFC, FTI, and CAH's Motions to Dismiss.  Innovative's Motion to Dismiss is **DENIED**.  The individual Motions to Dismiss filed by Davis, Gary, and Rivera are also **DENIED**.

**FACTUAL AND PROCEDURAL HISTORY**

On January 14, 2008, Plaintiff, a black female born in the United States Virgin Islands, was employed by Innovative as Vice President of Human Resources.  (Am. Compl. ¶¶ 26, 29.) Plaintiff, in her position as Vice President, was responsible for the entire human resources function of all of the companies owned by Innovative's parent company, ICC, in the United States Virgin Islands, British Virgin Islands and St. Maarten.  (*Id*. ¶ 30, n. 1.)  CAH, a subsidiary of CFC, was created to manage and operate Innovative.  (*Id*. ¶ 10.)  FTI, a global business advisory firm, served as CFC's advisor during Innovative's bankruptcy.  (*Id*. ¶¶ 13-14.)  Plaintiff's starting salary was $120,000.  (*Id*. ¶ 32.)  At that time, Plaintiff reported directly to E. Clarke Garnett and worked with Byron Smyl, a Bankruptcy Trustee representative.  (*Id*. ¶ 30.)

Defendants Davis and Gary, began working with Plaintiff in January 2010.  (*Id*. ¶ 36.)  At all relevant times, Davis was the Chief Executive Officer ("CEO") of Innovative, CEO of CAH and also served as the Managing Director of Corporate Finance at FTI.  (*Id*. ¶¶ 15-16.)  At all relevant times, Gary served as the Chief Financial Officer ("CFO") of Innovative, CFO of CAH

and was employed at FTI.  (*Id*. ¶¶ 17-18.)  Davis served as Plaintiff's supervisor and Gary directed her work.  (*Id*. ¶¶ 20-21.)  Plaintiff alleges that at all relevant times Davis and Gary "were acting as the partner, agent, servant, or employee" of the other Defendants and with the Defendants' knowledge.  (*Id*. ¶ 25.)

Plaintiff claims that Innovative had a practice of paying employees from the Virgin Islands less than employees hired from the United States, and Plaintiff contends that she also earned less than similarly situated employees.  (*Id*. ¶¶ 39, 41.)  Plaintiff alleges that Gary took an interest in staffing the Finance Department and contributed to the anti-local atmosphere in the department despite Innovative having an employment policy of requiring that positions be posted in-house and with the Virgin Islands Department of Labor before hiring from outside.  (*Id*. ¶¶ 44-45, 53.)  Plaintiff claims that Gary regularly disregarded the policy, and bullied Plaintiff into disregarding the policy as well.  (*Id*. ¶ 54.)  Further, Plaintiff contends that Gary ordered Plaintiff to hire white candidates and provide them with higher salaries than similarly situated Black and Hispanic employees employed at Innovative.  (*Id*. ¶ 59.)  Plaintiff asserts that more than ninety percent of Innovative's employees in the Finance Department were white and not from the island due to Innovative's hiring practices.  (*Id*. ¶ 70.)   On August 5, 2010, Plaintiff was called into a meeting with Davis where Plaintiff alleges she was bullied into acquiescing to Gary's illegal hiring activities.  (*Id*. ¶¶ 74-75.)

On June 20, 2011, Plaintiff was informed that Rivera had been hired by Innovative to work in Human Services as Vice President and that she was to report to him.  (*Id*. ¶¶ 79, 81, 85.)  On July 19, 2011, Rivera began work as the Vice President of Human Resources, Labor Relations and Administration.  (*Id*. ¶ 102.)  Plaintiff was told that Rivera had his doctorate degree and was certified as a Senior Professional in Human Resources.  (*Id.* ¶ 80.)  Rivera's salary when he was

hired was $144,000, and thus, he was paid more than Plaintiff. (*Id.* ¶ 82.) Plaintiff alleges Rivera began taking away some of her responsibilities in addition to bullying her and not advising her of meetings and events. (*Id.* ¶¶ 104, 106-109, 121.) On October 14, 2011, Plaintiff was formally demoted. (*Id.* ¶ 110.) On January 25, 2012, Plaintiff met with Innovative's staff attorney regarding alleged problems at Innovative including bullying and discrimination. (*Id.* ¶ 128.) Plaintiff had previously complained to the Vice President of Legal Affairs in July and October 2011. (*Id.* ¶ 129.) On February 2, 2012, Davis and Rivera informed Plaintiff that her position had been eliminated. (*Id.* ¶ 130.) Less than a year after being informed that her position had been eliminated, Plaintiff contends that her former position was listed as vacant on Innovative's website. (*Id.* ¶ 132.) Plaintiff applied for her former position in or around January 2013. (*Id.* ¶ 134.)

On March 27, 2013, Plaintiff filed her initial complaint against her former employers and supervisors alleging violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §§ 2000e to 2000e-17, for gender and race discrimination, and for discrimination based on national origin. (*Id.* ¶ 1.) On May 19, 2013, Plaintiff amended her complaint. Plaintiff alleges she was terminated because of her opposition to the race, gender and national origin discrimination exhibited by Innovative. (*Id.* ¶ 135.) Plaintiff seeks damages to redress the harm caused by Defendants which includes her termination from Innovative, suffering severe distress, and a miscarriage allegedly due to the stress caused by the Defendants. (*Id.* ¶¶ 2, 137, 201.)

On May 28, 2013, FTI with CAH, Innovative, and Davis filed three separate motions to dismiss all of the claims asserted in Plaintiff's Complaint. (*See* Innovative Mot. to Dismiss, Davis Mot. to Dismiss, FTI and CAH Mot. to Dismiss.) On June 4, 2013, CFC filed a motion to dismiss all claims asserted in Plaintiff's Complaint against it. (CFC Mot. to Dismiss.) On July 29, 2013, Rivera filed his Motion to Dismiss, and on August 21, 2013, Gary filed his Motion to Dismiss.

**LEGAL STANDARD**

*Motion to Dismiss Pursuant to Rule 12(b)(6)*

The adequacy of pleadings is governed by Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citation omitted); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that "Rule 8 requires a showing, rather than a blanket assertion, of entitlement to relief" (quoting *Twombly*, 550 U.S. at 555 n.3) (internal quotation marks omitted)).

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 233 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "'that the pleader is entitled to relief'" as required by Rule 8(a)(2). *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

According to the Supreme Court in *Twombly*, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (second alteration in original) (internal citations omitted).   The Third Circuit summarized the *Twombly* pleading standard as follows: "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." *Phillips*, 515 F.3d at 234 (alterations in original) (quoting *Twombly*, 550 U.S. at 556).

In *Fowler v. UPMC Shadyside*, the Third Circuit directed district courts to conduct a two-part analysis.  578 F.3d 203, 210 (2009).  First, the court must separate the factual elements from the legal conclusions.  *See id.*  The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  *Id.* at 210-11 (citing *Iqbal*, 556 U.S. at 678).  Second, the court must determine if "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  *Id.* at 211 (quoting *Iqbal*, 566 U.S. at 679).  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts."  *Id.* (citing *Phillips*, 515 F.3d at 234-35).

### *Motion to Dismiss Pursuant to Local Rule of Civil Procedure 12.1*

Pursuant to Local Rule of Civil Procedure 12.1, a party can make a dispositive motion. V.I. Local R. Civ. P. 12.1.  The Local Rule itself states only specific procedures to "govern dispositive motions filed pursuant to Federal Rule of Civil Procedure 12."  *Id.*

DISCUSSION

I.      *CFC*, *CAH*, *FTI*

        **a.** **Counts I-VI, XI, XVI and XVII: Gender Discrimination (Count I), Violation of the Equal Protection Act (Count II), National Origin Discrimination (Count III), Race Discrimination (Count IV), Violation of Section 42 U.S.C. §1981 (Count V), Violation of V.I. Wrongful Discharge Act (Count VI), Negligent Supervising/Hiring and Retention (Count XI), Retaliation for Protected Activity (Count XVI), Retaliation for Protected Activity (Count XVII).**

        CFC, CAH, and FTI argue, in separate motions, that Plaintiff's Complaint does not allege that they were in fact Plaintiff's employers or had any involvement in any of the acts and events of which Plaintiff complains.  (CFC Br. 9; CAH and FTI Br. 3.)  These three Defendants argue that Counts I-VI and XVI of the Complaint are all based on the notion that CFC, CAH, and FTI were Plaintiff's employers.   CAH and FTI further argue that Counts XI (Negligent Supervising/Hiring and Retention) and XVII (Retaliation for Protected Activity) should be dismissed for the same reasons.  These Defendants maintain that while "one entity may be held liable for claims brought by the employee of another entity under extremely limited circumstances, pursuant to the 'joint employers' and 'single employer/integrated enterprise'" in the instant matter the corporate entities are separate.  (CAH and FTI Br. 3.)

        The Third Circuit noted that ". . . there is a presumption that a corporation, even when it is a wholly owned subsidiary of another, is a separate entity."  *Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635, 643 (3d Cir. 1991).  "As a general rule, a parent corporation will not be held liable for the obligations of its subsidiary."  *In re Tutu Wells Contamination Litig.*, 846 F. Supp. 1243, 1261 (D.V.I. 1993).  The joint employers doctrine recognizes that "business entities involved are in fact separate but that they share or co-determine those matters governing the essential terms and conditions of employment."  *Mendez v. Hovensa, L.L.C.*, No. 02-0169, 2008 WL 803115, at

*4 (D.V.I. Mar. 24, 2008) (quoting *N.L.R.B. v. Browning–Ferris Indus. of Penn., Inc.,* 691 F.2d 1117, 1123 (3d Cir.1982)).  Specifically, courts assess five factors when determining whether an entity is a joint employer.  *Mendez,* 2008 WL 803115 at * 5.  Courts consider whether the alleged joint employer: "(1) did the hiring and firing; (2) directly administered any disciplinary procedures; (3) maintained records of hours, handled the payroll, or provided insurance; (4) directly supervised the employees; or (5) participated in the collective bargaining process."  *Id.* (quoting *AT&T v. N.L.R.B.,* 67 F.3d 446, 451 (2d Cir.1995)).

Under the integrated enterprise theory, courts will consider a company and its subsidiaries a single employer in the context of employment discrimination as follows:

> (1) where a company has split itself into entities with less than fifteen employees with the intent to evade Title VII's reach; (2) when a parent company has directed the subsidiary's discriminatory act of which the plaintiff is complaining; or (3) when a court would otherwise pierce the corporate veil (*i.e.,* look behind the corporate form to hold a corporation's shareholders personally liable).

*Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 85 (3d Cir. 2003).  "The defining inquiry under the integrated enterprise test 'concerns the parent company's actual role in the alleged discriminatory and retaliatory employment practices.'"  *Fulton v. Johnson & Johnson Pharm. Research and Dev., LLC*, No. 05-819, 2008 WL 544668, at *7 (D.N.J. Feb. 26, 2008) (quoting *Zysk v. FFE Minerals USA Inc.*, 225 F. Supp. 2d. 482, 496 (E.D. Pa. 2001)).

In the instant matter, Plaintiff's Complaint does not allege that CFC, CAH or FTI exerted any level of control over Plaintiff or any aspect of her employment to be considered joint employers of Plaintiff.  The Complaint is void of allegations that these Defendants split themselves into different entities to avoid liability under Title VII or that CFC, CAH or FTI played any role in the alleged discriminatory actions.  As such, it is not sufficiently pled that CFC, CAH or FTI were either joint employers of Plaintiff or were acting as a single employer.  Therefore, these

Defendants could not be held liable for alleged discrimination or retaliatory behavior as set forth in the Complaint.

**b. Counts VII and VIII: Breach of Contract (Count VII),  Breach of the Covenant of Good Faith and Fair Dealing (Count VIII)**

CFC, CAH, and FTI argue that Count VII (Breach of Contract) and Count VIII (Breach of the Covenant of Good Faith and Fair Dealing) should be dismissed because Plaintiff failed to allege that she had a contract with CFC.

In order to state a claim under the theory of breach of contract, the plaintiff must state three elements: "(1) a contract exists; (2) the contract imposes a duty on one party; (3) one party to the contract breached the duty imposed by the contract; and (3) damages resulted from the breach." *Pourzal v. Marriott Int'l, Inc.*, No. 2001-140, 2006 WL 2471834, at *2 (D.V.I. Aug. 21, 2006). Further, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *LPP Mortg. Ltd. v. Prosper*, No. 2006-180, 2008 WL 5272723, at *2 (D.V.I. Dec. 17, 2008) (citing Restatement (Second) of Contracts § 205 (1981)).  In addition, under Virgin Island law, "[i]nternal personnel rules can be considered an implied contract, if there is evidence that the employer intended to be bound by the requirements set forth in those rules." *Williams v. Virgin Islands Hous. Auth.*, No. 2005-0009, 2007 WL 6027814, at * 4 (D.V.I. Oct. 25, 2007).  To state a claim for breach of the implied duties of good faith and fair dealing, a party must allege: "(1) that a contract existed between the parties, and (2) that, in the performance or enforcement of the contract, the opposing party engaged in conduct that was fraudulent, deceitful, or otherwise inconsistent with the purpose of the agreement or the reasonable expectations of the parties." *LPP Mortg. Ltd.*, 2008 WL 5272723 at *2.

In the instant matter, Plaintiff does not allege that she had a contract with CFC, CAH or FTI.  Plaintiff alleges she "had a right to continued employment with Innovative so long as she did

9

not engage in any activities proscribed in the Virgin Islands Wrongful Discharge Statute."  (Am. Compl. ¶ 185.)  Plaintiff further asserts that Innovative's employee handbook created an implied contract under which Innovative, and by extension CFC, CAH and FTI, was bound.  (Pl. Opp'n to CAH and FTI Br. 19.)  Plaintiff fails to clearly allege that she had any type of contract with any Defendant other than Innovative.  Therefore, Plaintiff fails to state claims under the theories of breach of contract or breach of the implied duties of good faith and fair dealing.

   c. ***Counts IX and XVII: Violation of the Virgin Islands Civil Rights Statute (Count IX), Retaliation for Protected Activity (Count XVII)***

   CAH and FTI argue that Count IX (Violation of the Virgin Islands Civil Rights Act ("VICRA")) should be dismissed because the Complaint "fails to plausibly allege that FTI and CAH were Hodge's employers, or that they engaged in any conduct whatsoever relating to the claims asserted in these counts."  (CAH and FTI Br. 3.)  Further, CAH and FTI contend that there were no allegations in the Complaint that CAH or FTI "exercised any control over any aspect of Hodge's employment."  (*Id.* at 5.)   CFC also argues that Count IX is subject to dismissal because there is no private right of action under the statute.  (CFC Br. 13.)  CFC contends Count XVII (Retaliation for Protected Activity) should be dismissed for the same reason.  (*Id.*)

   Chapter 1 of VICRA, 10 V.I.C. §§ 1–11, "contains a statement declaring the public policy of prohibiting and punishing discrimination based on race, creed, color, or national origin." *Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 177 (3d Cir. 1999).  Further it "recognizes the right to equal treatment with respect to employment and working conditions, and specifies those discriminatory acts prohibited under the chapter." *Id.*  "In section 7, the legislature provided civil and criminal penalties for violations of the chapter." *Id.*  In *Figueroa*, the court found that the language of chapter 1 reflected the intention by the Virgin Islands legislature to create a private

cause of action and the creation of a private cause of action. *Id.* at 178. Therefore, a plaintiff may bring forward a private cause of action under chapter 1.

Chapter 5 of VICRA, 10 V.I.C. §§ 61-75, created the Virgin Islands Civil Rights Commission and granted it the power to combat discrimination. *Figueroa*, 188 F.3d at 177. Under 10 V.I.C. § 64, it is unlawful discriminatory practice:

> (a) For an employer, because of age, race, creed, color, national origin, place of birth, sex and/or political affiliation of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

10 V.I.C. § 64. Furthermore, it is unlawful for an employer to "discharge, expel or otherwise discriminate against any person because he has complained or opposed any practices forbidden under this title. . ." 10 V.I.C. § 64. The statute "...itself is silent as to the availability of a private right of action. . ." *Speaks v. Gov't of Virgin Islands*, No. 2006-168, 2009 WL 167330, at *3 (D.V.I. Jan. 14, 2009).

In *Figueroa*, it appears "the Third Circuit assumed that 'chapter 5 of Title 10, §§ 61–75, did not provide for a private cause of action. . .'" *Miller v. Virgin Islands Hous. Auth.*, No. 1998/0089, 2005 WL 1353395, at *4 (D.V.I. June 3, 2005) (citing *Figueroa*, 188 F.3d at 177–81). In *Figueroa*, the court stated:

> Chapter 5 provides a mechanism for those aggrieved by discrimination covered under the chapter to file a claim with the Commission, which will then investigate the claim and issue a cease and desist order, and such other orders that in the judgment of the Commission are consistent with enforcement of the chapter.

188 F.3d at 177. Thus, "the Virgin Islands legislature in 1974 enacted chapter 5 of Title 10 to create the Virgin Islands Civil Rights Commission and grant it 'general jurisdiction and power' to combat discrimination." *Miller*, 2005 WL 1353395, at *4 (quoting 10 V.I.C. § 61).

11

Since *Figueroa*, the District Court of the Virgin Islands "has issued a number of conflicting opinions regarding the question of whether it is proper to read Chapter 5 as creating a private right of action." *Speaks*, 2009 WL 167330 at * 9. *See, e.g.*, *Miller*,  2005 WL 1353395 at * 1 (stating that if the legislature had intended to create a private cause of action it would have done so in clear and convincing language); *Frorup-Alie v. V.I. Hous. Fin. Auth.*, 2003 U.S. Dist. LEXIS 25395 (D.V.I. Oct. 24, 2003) (stating that the remedies provided through the Civil Rights Commission are not exclusive remedies for violations specific to Chapter 5).  Notably, a majority of courts have not read Chapter 5 as creating a private right of action.

In the instant matter, Plaintiff alleges a "hostile work environment based on race, sex and national origin."  (Am. Compl. ¶ 196.)  As pled, Plaintiff does not specify under which chapter of VICRA she seeks to bring this cause of action.  (*See* Am. Comp.)  Here, after reviewing the relevant case law, this Court finds that Plaintiff cannot bring a private cause of action under 10 V.I.C. § 64.  However, even if Plaintiff sought to bring this cause of action under Chapter 1, where courts have found a private cause of action exists, she has not sufficiently alleged claims against CAH, FTI or CFC necessary to show that these Defendants were her employers under VICRA.

### d.  Counts XII and XV: Civil Conspiracy (Count XII) , Misrepresentation (Count XV)

CFC, CAH, and FTI argue Count XII (Civil Conspiracy) and Count XV (Misrepresentation) should be dismissed because Plaintiff fails to satisfy the elements of these causes of action.  "Under Virgin Islands law, a civil conspiracy consists of an agreement or combination to perform a wrongful act that results in damage to the plaintiff. A conspiracy may also consist of an agreement to do a lawful act by unlawful means." *Gov't Guar. Fund of Repub. of Fin. v. Hyatt Corp.*, 955 F. Supp. 441, 456 (D.V.I. 1997).  Additionally, "[t]o successfully allege an act of fraud or intentional misrepresentation, a complainant must demonstrate: (1) a knowing

12

misrepresentation of a material fact, (2) intent by the defendant that the plaintiff would rely on the false statement, (3) actual reliance, and (4) detriment as a result of that reliance." *Mendez v. Coastal Sys. Dev., Inc.*, No. 2005-0165, 2008 WL 2149373, at *10 (D.V.I. May 20, 2008) (citing Restatement (Second) of Torts, § 530 (1977)).   To assert a claim of negligent misrepresentation, under Virgin Islands law, a plaintiff must allege that:

> (1) the defendant made a representation that was false; (2) the defendant should have known that the representation was false; (3) the plaintiff relied on the representation; (4) the plaintiff suffered pecuniary loss due to its justifiable reliance on the representation; and (5) the defendant failed to exercise reasonable care or competence in obtaining or communicating the information contained in the representation.

*Addie v. Kjaer*, No. 2004-135, 2009 WL 453352, at *2 (D.V.I. Feb. 23, 2009) (citing *In re Tutu Water Wells Contamination Litigation*, 32 F. Supp. 2d 800 (D.V.I. 1998)).   The alleged misrepresentation must be "factual in nature and not promissory or relating to future events that might never come to fruition." *Hydro Investors, Inc. v. Trafalgar Power, Inc.,* 227 F.3d 8, 20–21 (2d Cir. 2000).

In the instant matter, Plaintiff alleges "Rivera, Gary and Davis acted in concert and with Innovative, CAH and others to unlawfully demote [Plaintiff] and subsequently terminate her employment." (Am. Compl. ¶ 219.)  However, the Complaint fails to allege anything to support an agreement with CAH and others, which is an essential element of a conspiracy.  Further, Plaintiff's allegations of a concerted action are insufficient in detail to show Plaintiff has a plausible claim for relief.  Plaintiff's Complaint also fails to state a plausible claim for intentional or negligent misrepresentation because the Complaint does not allege that CFC, CAH or FTI made any representation to her, whether true or false, with the intent to induce reliance.

### e. Count XIII: Intentional Infliction of Emotional Distress

"To prevail on a claim for intentional infliction of emotional distress the defendant must be '[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another....'" *Manns v. Leather Shop Inc.*, 960 F. Supp. 925, 930 (D.V.I. 1997) (quoting Restatement (Second) of Torts § 46 (1965)).   Plaintiff "must allege conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in civilized society.'" *Nino v. Jewelry Exch., Inc.*, No. 2006-39, 2008 WL 5272520, at *1 (D.V.I. Dec. 16, 2008) (quoting Restatement (Second) of Torts § 46 (1965)).   The Third Circuit has found that it is "extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988).   However, "allegations of a continuous pattern of intolerable conduct may support a claim for intentional infliction of emotional distress in the employment context." *Nino*, 2008 WL 5272520 at *2.

Here, CFC argues that Plaintiff's claim of intentional infliction of emotional distress should be dismissed because Plaintiff fails to plead essential elements of this cause of action. Specifically, CFC asserts that the Complaint fails to "identify any specific conduct by CFC."  (CFC Br. 15.) CFC argues that while Plaintiff vaguely mentions that the Defendants were acting in concert to demote and subsequently terminate Plaintiff's employment, Plaintiff does not allege with specificity "any facts implicating CFC in these alleged actions."  (*Id*.)  CAH and FTI argue Count XIII should be dismissed due to Plaintiff's failure to allege that CAH or FTI engaged in any intentional conduct toward her or "that Gary and Davis were acting in their capacities as FTI and CAH employees when they engaged in any of the alleged acts."  (CAH and FTI Br. 14.)

In the Complaint, Plaintiff alleges all Defendants "acted intentionally, recklessly and/or with deliberate indifference to a substantial possibility that severe emotional distress would result to [Plaintiff]."  (Am. Compl. ¶ 227.)  However, Plaintiff does not allege any actions, specifically, on the part of CFC, CAH, and FTI in the Complaint.  Plaintiff's allegations of bullying and exclusions from meetings, as pled, are too vague as to CFC, CAH, and FTI to state a claim for intentional infliction of emotional distress against these Defendants.

### f.   Count XIX: Negligent Infliction of Emotional Distress

To prevail on a claim of negligent infliction of emotional distress, the plaintiff must show that the defendant "unintentionally caus[ed] emotional distress to another" and:

> (a) should have realized that his conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person, and (b) from facts known to him should have realized that the distress, if it were caused, might result in illness or bodily harm.

Restatement (Second) of Torts § 313 (1965).  The District Court of the Virgin Islands has "required two elements to sustain a claim of negligent infliction of emotional distress. First, the negligent conduct must have placed the plaintiff in danger of his or her own safety. Second, the plaintiff must have suffered some physical harm as a result of the emotional distress."  *Int'l Islamic Cmty. of Masjid Baytulkhaliq, Inc. v. U.S.*, 981 F. Supp. 352, 370 (D.V.I. 1997) *aff'd sub nom. The Int'l Islamic Cmty. of Masjid Baytul-Khaliq, Inc. v. U.S.*, 176 F.3d 472 (3d Cir. 1999) (citing *Mingolla v. Minn. Mining and Mfg. Co.,* 893 F. Supp. 499, 506 (D.V.I. 1995)).

Here, CFC argues that Count XIX should be dismissed because there are no allegations, in the Complaint, that any of the Defendants placed Plaintiff in danger or threatened Plaintiff's safety. (CFC Br. 17.)  Furthermore, CFC contends Plaintiff fails to allege physical harm.  (*Id.*)  CAH and FTI argue that the Complaint fails to allege any negligent action on the part of either Defendant

toward Plaintiff or that Davis and Gary were acting in their capacities as FTI and CAH employees when they engaged in the alleged actions.  (CAH and FTI Br. 14.)

Plaintiff alleges that all Defendants "were grossly negligent in their conduct."  (Am. Compl. ¶ 279.)  Plaintiff contends that the "unlawful harassment, retaliation, conduct towards and termination of Mrs. Hodge, due to its improper motivations and surrounding circumstances constitute extreme and outrageous conduct."  *(Id.* ¶ 280.)  Plaintiff further avers that because of Defendants' "grossly negligent acts", she "suffered physical pain and emotional distress..." *(Id.* ¶ 281).  However, Plaintiff fails to allege conduct on the part of CFC, CAH and FTI that placed Plaintiff in danger of her own safety and caused physical harm to the Plaintiff from emotional distress.  Plaintiff's general and conclusory claim that all Defendants acted with gross negligence alone is not specific to CFC, CAH and FTI, and is not sufficient for a claim for negligent infliction of emotional distress.

Thus, in summary, all claims against CFC, CAH, and FTI will be dismissed without prejudice.

**II.    *Innovative***

**a.  *Count I: Gender Discrimination***

Innovative argues that Count I should be dismissed because Plaintiff fails to allege a claim for gender-based discrimination against it.  (Innovative Br. 1.)  Innovative contends that Plaintiff fails to plead that members outside of her protected class, that were allegedly treated more favorably, were similarly situated.  (*Id.* at 3.)  Further, Innovative argues the Complaint does not contain sufficient allegations to give "rise to an inference that Hodge's purported demotion and termination were motivated by intentional discrimination based on her sex." (*Id.* at 4.)

"The existence of a *prima facie* case of employment discrimination is a question of law that must be decided by the Court." *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). To make a prima facie case of employment discrimination, a plaintiff must show that:

> (1) the plaintiff belongs to a protected class; (2) he/she was qualified for the position; (3) he/she was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position.

*Id.* However, "the *prima facie* test remains flexible and must be tailored to fit the specific context in which it is applied." *Id.* (citing *Geraci v. Moody–Tottrup, Int'l, Inc.,* 82 F.3d 578, 581 (3d Cir.1996). "To make a comparison of the plaintiff's treatment to that of an employee outside the plaintiff's protected class for purposes of a Title VII claim, the plaintiff must show that he [or she] and the employee are similarly situated in all *relevant* respects." *Houston v. Easton Area Sch. Dist.*, 355 F. App'x 651, 654 (3d Cir. 2009) (emphasis in original). Courts consider certain relevant factors when determining whether employees are similarly situated. *Id.* These factors include: "showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.*

Further, to make out a *prima facie* case based on "other circumstances" of gender discrimination, a plaintiff must allege sufficient facts to "establish some causal nexus between [plaintiff's] membership in a protected class and the decision to not rehire [plaintiff]." *Sarullo*, 352 F.3d at 798. "It is well settled that verbal comments may constitute evidence of discriminatory intent if the plaintiff can establish a nexus between the alleged discriminatory remarks and the defendant's decision to terminate the plaintiff's employment." *Gray v. Lutheran Soc. Servs. of Metro. New York, Inc.*, No. 04CV2843, 2006 WL 1982859, at *8 (E.D.N.Y. July 13, 2006).

17

Here, after reviewing the facts in the light most favorable to Plaintiff, as the Court is required to do at this stage, this Court finds that Plaintiff has sufficiently stated facts that may give rise to her claims.  Plaintiff was an employee of Innovative, and her pleadings are acceptable to support a claim for gender discrimination.

### b. *Count II: Violation of the Equal Pay Act*

Innovative argues that to the extent Plaintiff intends to assert a claim for violation of the Equal Pay Act, Count II should be dismissed because her Complaint alleges she was paid less than people of a different race or color and neither race nor color is a protected category under the Equal Pay Act.  (Innovative Br. 7.)  Furthermore, Innovative argues that to the extent Count II intends to assert an Equal Pay Act claim based on allegations that Plaintiff was paid less than male employees, the claim should fail because "Hodge's conclusory assertion that she was paid less than black and white male employees lacks any factual foundation."  (*Id.*)  Count II of the Complaint contains references to the Equal Pay Act and the Lilly Ledbetter Fair Pay Act.

To establish a claim under the Equal Pay Act, 29 U.S.C.A. § 206(d) ("EPA"), "[t]he plaintiff must first establish a prima facie case by demonstrating that employees of the opposite sex were paid differently for performing 'equal work'—work of substantially equal skill, effort and responsibility, under similar working conditions." *Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3d Cir. 2000) (quoting *E.E.O.C. v. State of Del. Dept. of Health and Services*, 865 F.2d 1408, 1414 (3rd Cir. 1989)).  "The crucial finding on the equal work issue is whether the jobs to be compared have a 'common core' of tasks, *i.e.,* whether a significant portion of the two jobs is identical." *Brobst v. Columbus Servs. Int'l*, 761 F.2d 148, 156 (3d Cir. 1985).  The Lilly Ledbetter Fair Pay Act ("Fair Pay Act"), Pub.L. No. 111–2, § 3, 123 Stat. 5 (2009), "'clarifie[s] how pay discrimination claims should be analyzed for purposes of the statute of limitations.'" *Fairclough*

*v. WAWA, Inc.*, No. 09-2153, 2010 WL 2179153, at *4 (D.N.J. May 28, 2010), *aff'd*, 412 F. App'x 465 (3d Cir. 2010)  (quoting *Summy-Long v. Pa. State Univ.,* No. 06-1117, 2010 WL 1253472, at *7 (M.D.Pa. Mar. 24, 2010)).  The Fair Pay Act does not "alter the requirements of alleging a prima facie case under the EPA.  *Fairclough*, 2010 WL 2179153 at * 4.

Here, while Plaintiff may or may not be able to support her claims after discovery, at this stage she has sufficiently set forth a basis for her claim of a violation of the Equal Pay Act.  Rivera's salary when he was hired was $144,000, and thus, he was paid more than Plaintiff.  (*Id.* ¶ 82.) Defendant argues that Rivera had his doctorate degree and was certified as a Senior Professional in Human Resources with more experience.  (Innovative Br. 3.)  Further, Defendant argues that the titles are different as Plaintiff was Vice President of Human Resources and Rivera was hired as Vice President Labor Relations, Human Relations, and Administration.  (*Id.*; Am. Compl. ¶¶19, 29.)  However, at this pleading stage, given the allegation that Plaintiff was essentially "replaced and demoted" by the hiring of Rivera, this Court will not dismiss the claim.  (Am. Compl. ¶ 102.)

### c.  *Count III: National Origin Discrimination*

Innovative argues Count III should be dismissed because Plaintiff fails to allege a national origin discrimination claim that is plausible.  (Innovative Br. 9.)

In order to establish a *prima facie* case of national origin discrimination, a plaintiff must demonstrate the same elements analyzed under any claim of employment discrimination brought pursuant to Title VII: "(1) she is a member of a protected class; (2) she was qualified to perform her job; (3) she suffered an adverse employment action; and (4) the adverse employment action was taken under circumstances that give rise to an inference of unlawful discrimination." *Beaubrun v. Inter Cultural Family*, No. 05-06688, 2006 WL 1997371, at *6 (E.D. Pa. July 13, 2006).   The Third Circuit has stated, "[a]lthough we have not previously held that 'Virgin

Islanders' is a legitimate designation of national origin for purposes of a federal discrimination claim, we have certainly implied it." *Chiang v. Veneman*, 385 F.3d 256, 269 (3d Cir. 2004).

In the instant matter, Plaintiff has adequately pled facts with regard to her employer, Innovative, to establish a claim for national origin discrimination. Plaintiff contends that she and other members of her protected class were treated differently and subject to discriminatory actions by Innovative. For example, Plaintiff claims that there was an "anti-Local/Caribbean atmosphere", and even though they applied, Gary often said there were "no qualified local people." (*See e.g.*, ¶¶ 45, 46-48.) As such, Plaintiff has sufficiently pled the elements required to sustain the claim.

> ### d. Counts IV and V: Race Discrimination under Title VII (Count IV), Violation of Section 42 U.S.C. §1981 (Count V)

Innovative argues Counts IV and V should be dismissed because Plaintiff fails to establish a *prima facie* claim for race discrimination under either Title VII or Section 42 U.S.C. § 1981. (Innovative Br. 13.) Innovative contends that Plaintiff fails to sufficiently allege that "she was treated less favorably than similarly situated non-Black employees, or that circumstances give rise to an inference of discrimination and a causal connection exists between her race and her alleged demotion and termination." (*Id*. at 13.)

Race discrimination claims brought pursuant to Section 1981 and Title VII are analyzed under the same analytical framework. *See Jones v. Sch. Dist. of Phila.*, 198 F.3d 403 (3d Cir. 1999). To establish a *prima facie* claim of discrimination under Title VII or Section 1981, a plaintiff must show the same four elements of all discrimination claims listed in Section II(a) herein. The elements for a *prima facie* case of discrimination based on "other circumstances" are also outlined in Section II(a). Notably, for a motion to dismiss, "a plaintiff is not required to establish the elements of a *prima facie* case but instead, need only put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" *Fowler*

20

*v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Associates, Ltd.* No. 08–207, 2008 WL 2312671, at *4 (W.D.Pa. June 4, 2008)).

In addition to disparate treatment, a hostile environment may give rise to a discrimination claim against an employer. *Cardenas v. Massey***,** 269 F.3d 251 (3d Cir. 2001). "In order to establish a claim for employment discrimination due to an intimidating or offensive work environment, a plaintiff must establish, 'by the totality of the circumstances, the existence of a hostile or abusive *environment* which is severe enough to affect the psychological stability of a minority employee.'" *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1081 (3d Cir. 1996) (quoting *Vance v. Southern Bell Tel. and Tel. Co.,* 863 F.2d 1503, 1510 (11th Cir.1989))(emphasis in original). Specifically, "a plaintiff must prove the following: (1) the employee suffered intentional discrimination because of their [race] (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same [race] in that position; and (5) the existence of *respondeat superior* liability." *Huston v. Procter & Gamble Paper Products Corp.*, 568 F.3d 100, 104 (3d Cir. 2009). Acts of harassment do not have to be accompanied by racially discriminatory statements. *Aman*, 85 F.3d at 1083. "All that is required is a showing that race is a substantial factor in the harassment, and that if the plaintiff had been white she would not have been treated in the same manner." *Id*. (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469 (2d Cir. 1990)).

Here, given the nature of Plaintiff's claims as pled, Plaintiff has sufficiently presented allegations of race discrimination. Plaintiff points out that the majority of those of Virgin Island origin are black. (Pl.'s Opp'n to Innovative Br. 14.) Plaintiff also claims that she witnessed and

complained about Innovative's treatment and practices.   At this stage, this Court finds that Plaintiff's pleadings are sufficient regarding race discrimination.

### e.   Count VI: Violation of V.I. Wrongful Discharge Act

Innovative argues that Plaintiff does not state a valid claim for relief under the Virgin Islands Wrongful Discharge Act ("WDA") because her claim is preempted by the National Labor Relations Act ("NLRA") to the extent that it applies to managerial or supervisory employees. (Innovative Br. 19-20.)   Innovative maintains Plaintiff was a managerial employee.   (*Id*. at 20.)

Nine reasons that an employer may dismiss an employee are listed in 24 V.I.C. § 76 (a). Further, 24 V.I.C. § 76 (c) states that "[a]ny employee discharged for reasons other than those stated in subsection (a) of this section shall be considered to have been wrongfully discharged." "[T]he Virgin Islands Wrongful Discharge Act is preempted by the National Labor Relations Act when the individual claiming wrongful discharge is a supervisor. This includes managerial employees..."  *Lue-Martin v. March Grp.*, No. 03-0105, 2008 WL 2966406, at *11 (D.V.I. July 30, 2008) *aff'd sub nom*. *Lue-Martin v. March Grp. L.L.L.P.*, 379 F. App'x 190 (3d Cir. 2010).

Here, Plaintiff argues that WDA does apply because she was not in a managerial position when she was unlawfully terminated.   (Pl. Opp'n to Innovative Br. 20.)   Plaintiff contends that Rivera had taken away some of her responsibilities and distributed them to other staff members in addition to forbidding her to speak on behalf of Human Resources.   Furthermore, Plaintiff alleges she was demoted and that Rivera asked Plaintiff's support staff to report to him directly.   (*Id*.)   As such, she claims that she was not a supervisor at the time when she was terminated.   Viewing Plaintiff's allegations in the light most favorable to Plaintiff, as is required at this stage, this Court finds that Plaintiff has sufficiently pled a claim for a violation of the WDA.

**f.  Count VII and Count VIII: Breach of Contract (Count VII), Breach of Implied Covenants of Good Faith and Fair Dealing (Count VIII)**

Innovative argues Count VII should be dismissed because Plaintiff fails to allege sufficient facts to support a plausible claim that a contract existed between Plaintiff and Innovative. (Innovative Br. 21.)   Further, Innovative argues that as a former managerial employee of Innovative, Plaintiff was not subject to the provisions of WDA and even if she was subject to the provisions "the rights created by the WDA are statutory, not contractual."  (*Id.*)

Section I(b) outlines the legal standard for breach of contract and for breach of implied covenants of good faith and fair dealing.   Here, Plaintiff relies on the employee handbook and indications that Innovative intended to be bound by it to establish an implied contract.  For the reasons stated herein and in Section II(e), at this stage Plaintiff's pleadings are sufficient for these claims.

**g.  Count IX: Violation of the VICRA**

Innovative argues, among other things, that "to the extent Count Nine asserts a claim for race-based hostile work environment under the VICRA, it fails for precisely the same reasons" as Plaintiff's race discrimination claims.    (Innovative Br. 22.)   Section I(c) discusses the legal standard for a violation of the VICRA.   Based on the discussions in this Opinion regarding Innovative, this Court finds that Plaintiff has sufficiently pled claims against Innovative under the VICRA regarding hostile work environment.   Unlike CAH, FTI and CFC, Innovative employed Plaintiff.  Plaintiff has sufficiently pled grounds for a claim against Innovative.

**h.  Counts XI and XIX: Negligent Supervision/ Hiring and Retention (Count XI), Negligent Infliction of Emotional Distress (Count XIX)**

Innovative argues the counts regarding Negligent Supervision/Hiring and Retention and Negligent Infliction of Emotional Distress should be dismissed because they are barred by the

exclusivity provision of the Virgin Islands Worker's Compensation Act ("WCA"), Title 24, Section 284(a) of the Virgin Islands Code.  (Innovative Br. 23.)

The local law of the Virgin Islands does not specifically address negligent hiring and retention.  Plaintiff relies on the Restatement (Second) of Torts which provides that:

> [a] master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
> (a) the servant
> (i) is upon the premises in possession of the master ..., and
> (b) the master
> (i) knows or has reason to know that he has the ability to control his servant, and
> (ii) knows or should know of the necessity and opportunity for exercising such control.

Restatement (Second) of Torts § 317 (1965).   The Restatement (Second) of Agency defines servant as "an agent employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master." Restatement (Second) of Agency § 2 (1958).

Section 284 states:

> When an employer is insured under this chapter, the right herein established to obtain compensation shall be the only remedy against the employer; but in case of accident to, or disease or death of, an employee not entitled to compensation under this chapter, the liability of the employer is, and shall continue to be the same as if this chapter did not exist.

24 V.I.C. § 284(a).  Section I(f) outlines the legal standard for negligent infliction of emotional distress.

"When an employee's injury is compensable under a workers' compensation statute, by reason of exclusive remedy provisions, such as WCA § 284(a), the employer is not liable for negligence at common law." *Chinnery v. Gov't of Virgin Islands*, 865 F.2d 68 (3d Cir. 1989).  In order for Plaintiff's claims to be compensable under the WCA, Plaintiff's injuries must have "aris[en] out of and in the course of employment." 24 V.I.C. § 252(a).  Further, the injuries "must have also resulted in a harmful change to [the plaintiff]." *Chinnery*, 865 F.2d at 71.

At this stage, and considering Plaintiff's allegations, Plaintiff has adequately pled her negligence claims.  Plaintiff specifically references actions by Innovative or its employees that form the basis of Plaintiff's claims. For example, Plaintiff alleges demotion and discriminatory actions.  Further, Plaintiff alleges severe distress as a result that caused her to miscarry, a physical injury.  Plaintiff's pleadings are sufficient to maintain these negligence claims at this stage.

### i.   Count XII: Civil Conspiracy

Innovative argues Count XII should be dismissed because Plaintiff fails to allege sufficient facts to support a purported conspiracy with any specificity.  (Innovative Br. 25.)

Section I(d) discusses the legal standard for civil conspiracy. Here again, Plaintiff's pleadings are sufficient to maintain this claim at this stage.  Plaintiff alleges that Gary, Davis, and Rivera acted in concert.   Plaintiff specifically references actions by Innovative and/or its employees that form the basis of Plaintiff's claims.

### j.   Count XIII: Intentional Infliction of Emotional Distress

Innovative argues Count XIII should be dismissed because Plaintiff's claim relies on workplace issues which Innovative contends do not create liability for intentional infliction of emotional distress.  (Innovative Br. 26.)  Further, Innovative argues that the Complaint does not allege facts that show how the emotional distress was caused or what caused it.  (*Id*. at 27.)

Section I(e) herein describes the elements of intentional infliction of emotional distress. Again, Plaintiff's pleadings are sufficient to maintain this claim at this stage. As discussed above, Plaintiff specifically references actions by Innovative and/or its employees that form the basis of Plaintiff's claims.

> **k.  Counts XVI and XVII: Retaliation for Protected Activity under Title VII and Title 10 §64 (9)(e).**

Innovative argues Counts XVI and XVII should be dismissed because the Complaint fails to allege a claim for retaliation under Title VII or VICRA because none of the alleged conduct reasonably could be viewed as constituting discrimination prohibited by Title VII or VICRA. (Innovative Br. 29-30.)

In order to establish a claim for retaliation, "plaintiff must demonstrate that: (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Bostic v. AT & T of Virgin Islands*, 166 F. Supp. 2d 350, 359-60 (D.V.I. 2001). In order "... for a complaint to amount to 'protected activity,' it must implicate an employment practice made illegal by Title VII." *Davis v. City of Newark*, 417 F. App'x 201, 203 (3d Cir. 2011). "A general complaint of unfair treatment is insufficient to establish protected activity under Title VII." *Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc.*, 450 F.3d 130, 135 (3d Cir. 2006). "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

As discussed herein, Plaintiff has sufficiently pled allegations to support this claim.

1. ***Count XV: Misrepresentation***

Innovative argues Plaintiff's claim of misrepresentation fails regardless of whether it is a claim for negligent misrepresentation or intentional misrepresentation.  (Innovative Br. 28.) Section I(d) outlines the elements of intentional and negligent misrepresentation.  For the reasons discussed herein regarding the other claims against Innovative, this Court finds Plaintiff has sufficiently pled a claim for negligent or intentional misrepresentation against Innovative.

**III.    *Davis, Gary, Rivera***

Davis, Gary, and Rivera (also referred to hereafter as the "Individual Defendants") filed separately to dismiss Plaintiff's claims against them; however, as they raise similar arguments, this Court will address them together.

a. ***Count V and Count X: Violation of Section 42 U.S.C. § 1981 (Count V), Violation of the Virgin Islands Civil Rights Act (Count X)***

Section II(d) herein outlines the analytical framework applicable to discrimination claims brought pursuant to § 1981.

Here, the Individual Defendants argue Count V, for violations of § 1981, should be dismissed because the allegations against them are insufficient to state a plausible claim.  (*See e.g.*, Davis Br. 1.) They argue that under the disparate treatment theory, Plaintiff fails to satisfy the fourth element.  (*Id.* at 2.)  Specifically, for example, Davis contends that Plaintiff does not allege sufficient facts to support an inference that Davis treated her less favorably than similarly situated non-Black employees or that give rise to an inference of discrimination based on other circumstances.  (*Id.* at 3.)  Further, the Individual Defendants contend that Plaintiff fails to establish the first, second, and fourth elements of race discrimination under a theory of hostile work environment.  (*Id.* at 7.)  They argue that Plaintiff does not allege that Davis, Gary or Rivera

personally and intentionally discriminated against Plaintiff based on any protected characteristic, or that they were personally involved in creating an objectively hostile work environment. (*Id.* at 8-9.) In addition, they assert that the Complaint does not specifically show how they allegedly treated Plaintiff less favorably.

As discussed herein, the elements for establishing a claim for violation of the VICRA are similar to the elements needed for a claim of hostile work environment. The Individual Defendants essentially argue that Count X should be dismissed for the same reasons that Count V should be dismissed. (*See e.g.*, Davis Br. 10.) They contend that to the extent Count X asserts claims for sex and national origin based hostile work environment, the claims should be dismissed because Plaintiff fails to allege that they were personally involved in intentional discrimination against her or that the purported instances of sex or national origin based discrimination was sufficiently severe and pervasive enough to create an objectively hostile work environment. (*Id.* at 10, 12.)

This Court finds that, as discussed above, Plaintiff has provided specific references to actions allegedly taken by Davis, Gary, and Rivera to adequately plead the claims in Counts V and X.

### b.  Counts XII, XIII and XVIII: Civil Conspiracy (Count XII), Intentional Infliction of Emotional Distress (Count XIII), Retaliation for Protected Activity (XVIII)

The Individual Defendants argue that Counts XII, XIII and XVIII should be dismissed for the same reasons argued by Innovative. (*See e.g.*, Davis Br. 13.) These arguments regarding civil conspiracy, intentional infliction of emotional distress, and retaliation for protected activity are addressed in Section II. For the same reasons discussed above with respect to Innovative, this Court finds that Plaintiff has sufficiently pled these claims.

### c.  Count XIV: Tortious Interference with Contract

In order to state a claim for tortious interference with contract, a plaintiff must allege "that [(1)]there was an existing contract, [(2)] the alleged tortfeasor had knowledge of the existing contract, [(3)] the alleged tortfeasor's actions were the proximate cause of the third person's failure to perform, and that the tortfeasor's actions were intentional, improper, and caused damages." *Gov't Guar. Fund of Repub. of Fin. V. Hyatt Corp.*, 955 F. Supp. 441, 452 (D.V.I. 1997).

Here, the Individual Defendants argue that Plaintiff has failed to satisfy the first, second and fourth elements of the claim.  (*See e.g.*, Davis Br. 13.)  For example, Davis contends that Plaintiff has not sufficiently alleged the existence of "any employment contract between her and Innovative, much less Davis' awareness of such a contract."  (*Id*.)   Further, Davis, like the other Individual Defendants, argues that the Complaint "contains insufficient facts to support the inference that Davis engaged in intentional, improper conduct which caused a third party not to perform its obligations under any alleged contract."  (*Id*. at 14.)

As discussed herein, Plaintiff asserts that an implied contract existed under which Innovative was bound and relies on the Virgin Islands Wrongful Discharge Statute.  (*See* Pl. Opp'n to Innovative Br. 9, 21.)  Based on the discussion regarding Innovative's implied contract and the Individual Defendants alleged actions, this Court finds that Plaintiff has sufficiently pled a claim for tortious interference with contract against the Individual Defendants at this stage.

### d.  Count XV: Misrepresentation

The elements needed to establish a claim for intentional or negligent misrepresentation are outlined in Section I of this Opinion.

The Individual Defendants argue that to the extent Count XV asserts a claim for negligent misrepresentation the claim should be dismissed because there are no allegations suggesting their

statements were false when made or that they intended Plaintiff to rely on such as statements.[1]  (*Id.* at 16, 17.)  Based on the actions and statements included in the Complaint, Plaintiff has sufficiently pled a claim for misrepresentation against the Individual Defendant at this stage.

### e.   *Count XIX: Negligent Infliction of Emotional Distress*

Davis, Gary, and Rivera argue that the Complaint fails to state a plausible claim for negligent infliction of emotional distress.  (Davis Br. 17.)  Plaintiff names Davis as CEO and individually, Gary individually, and Rivera in her Complaint.  Davis, like the other individual Defendants, maintains that the Complaint does not allege that he knew or should have known that his "alleged actions involved an unreasonable risk of causing emotional distress to Hodge that might result in her having a miscarriage."  (*Id.* at 18.)  Further, the Individual Defendants argue that there are no allegations that each of them or anyone at Innovative knew that Plaintiff was pregnant or when specifically the miscarriage occurred.  (*Id.* at 18.)  Additionally, in their reply papers, the Individual Defendants contend that the WCA bars Plaintiff's claims.

The elements for a claim of negligent infliction of emotional distress are discussed in Section I of this Opinion.  Further, the basic framework of the WCA provisions are discussed in Section II.

In *Tavarez v. Klingensmith*, the Third Circuit concluded that "the immunity afforded to an employer under the WCA also shields a supervisor from personal liability for harm caused by his negligent failure to provide a safe environment for the employer's workers."  372 F.3d 188, 193 (3d Cir. 2004).  The court held in *Nickeo v. Atlantic Tele-Network, Co.*:

> When an employee acts for and/or on behalf of the employer to carry out the duty of the employer to provide safe working conditions, that employee shall be considered the 'employer' for purposes of the workers' compensation statute…thus, liability for negligent safety

---

[1] For example, Davis' statement to Plaintiff that her employment was terminated because her position was eliminated (Davis Br.  16-17.)

> measures is chargeable exclusively to the employer and thus *may not* be shifted to an employee, acting in the role of safety decision-maker.

No. 748/1997, 2003 WL 193435, at *8 (D.V.I Jan. 14, 2003)(emphasis in original).  The applicable case law primarily focuses on the failure to provide a safe workplace environment when addressing whether a supervisor can have immunity from personal liability under the WCA.  *See e.g.*, *Tavarez*, 372 F.3d at 193.  Here, the Individual Defendants do not directly address this issue.  At this time, Plaintiff has sufficiently pled a claim for negligent infliction of emotional distress.  Although discovery may not ultimately provide support to succeed on these claims regarding these Defendants, this Court views Plaintiff's claims in the light most favorable to Plaintiff, and these claims are sufficient to proceed.

**CONCLUSION**

For the reasons discussed above, CFC, FTI, and CAH's Motions to Dismiss are **GRANTED**.  Innovative's Motion to Dismiss is **DENIED**.  The individual Motions to Dismiss filed by Davis, Gary, and Rivera are also **DENIED**.

s/SUSAN D. WIGENTON, U.S.D.J.


Orig:          Clerk
cc:            Parties
               Ruth Miller, USMJ

31